USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

No. 15 Civ. 3956 (RJS)

---

JOHN JOHNSON,

Petitioner,

VERSUS

UNITED STATES OF AMERICA,

Respondent.

---

No. 11 Cr. 487-2 (RJS)

---

UNITED STATES OF AMERICA,

VERSUS

JOHN JOHNSON,

Defendant.

---

OPINION AND ORDER
September 26, 2018

---

RICHARD J. SULLIVAN, District Judge:

John Johnson ("Petitioner"), proceeding *pro se*, brings this petition for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in connection with his conviction and sentence for conspiracy to commit robbery, attempted robbery, and murder through the use of a firearm. (Doc. No. 95[1] ("Petition" or "Pet.").) For the reasons set forth below, the Petition is DENIED.

---

[1] Unless otherwise noted, all docket citations refer to the docket in the criminal case, 11-cr-487 (RJS).

## I. Background[2]

On December 1, 2007, Petitioner took part in an armed robbery of a group of drug dealers operating out of the lobby of a building located at 1275 Lafayette Avenue in the Bronx (the "Building"). The conspiracy was set in motion earlier that day, when a drug dealer named Donnell Richardson enlisted the assistance of Petitioner's co-defendants Ronnie Gonzalez and Gregory Reed to stick up rival drug dealers operating in the Building. (Tr. 521:22–524:15.) In turn, Reed recruited Petitioner to take part in the robbery. (*Id.* at 529:16–530:20; *see also id.* at 602:6–604:16, 1535:7–10.)

At the time of the robbery, Richardson served as a lookout, parking his car across the street from the Building, while Petitioner, Gonzalez, and Reed ("Defendants") entered the Building, armed with two firearms. (*Id.* at 538:2–542:8.) Once inside, Defendants encountered two individuals, Bernardo Garcia and Luis Navarro, who were the targets of the robbery. Upon seeing the armed men, Navarro immediately ran through the lobby of the Building and up a stairwell, while Reed followed in pursuit. (*Id.* at 1080:3–1081:11.) As Reed chased Navarro up the stairs, Petitioner shot Garcia in the chest, killing him. (*Id.* at 545:21–548:10.)

On June 6, 2011, a federal grand jury returned an indictment charging Petitioner, Gonzalez, and Reed with conspiracy to commit Hobbs Act robbery, attempted Hobbs Act robbery, and use of a firearm during and in relation to a crime of violence that resulted in the death of a person. (Doc. No. 5.) Richardson signed a cooperation agreement with the government and acted as the government's primary witness at Defendants' jury trial, which began on June 11, 2012 and lasted for eleven days. The government also called intended robbery victim Navarro, among other witnesses. On June 26, 2012, the jury convicted Defendants on all counts. After denying Petitioner's post-trial motions (Doc. No. 72), the Court sentenced Petitioner on January 16, 2013 to 40 years' imprisonment on the firearm conviction and 20 years' imprisonment for each of the two robbery convictions, all to run concurrently. (Doc. No. 78.) The Second Circuit affirmed Petitioner's conviction in an opinion dated June 25, 2014. *See United States v. Reed*, 570 F. App'x 104 (2d Cir. 2014). Thereafter, Petitioner filed his habeas petition (Doc. No. 95), which was subsequently briefed by the parties (*see* Doc. Nos. 98, 99, 103). On May 30, 2018, Petitioner filed a "supplement" to his petition (Doc. No. 129), and, on July 5, 2018, the government submitted its response to Petitioner's supplement (Doc. No. 132).

## II. Legal Standard

Section 2255 enables a prisoner who was sentenced by a federal court to petition that court to vacate, set aside, or correct the sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under Section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete

---

[2] The following facts are taken from the trial transcript ("Tr.") and exhibits introduced at trial. In ruling on the Petition, the Court has also considered Petitioner's habeas petition and attached affidavits (Doc. No. 95), his attorney's affidavit (Doc. No. 98), the government's memorandum in opposition (Doc. No. 99), and Petitioner's reply (Doc. No. 103).

miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation omitted). A claim of ineffective assistance of counsel, however, is one permissible basis for bringing a Section 2255 petition. *See Massaro v. United States*, 538 U.S. 500 (2003).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel. When challenging the effectiveness of counsel's assistance, a criminal defendant must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). A court must reject a petitioner's ineffective assistance of counsel claim if it fails to satisfy either prong of the *Strickland* test. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

With respect to *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The Court starts from the strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective assistance in any given case, and "[e]ven the best criminal defense attorneys would not defend a particular client the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689–90.

III. DISCUSSION

Petitioner asserts that his trial counsel, David Greenfield ("Greenfield" or "Trial Counsel"), provided constitutionally ineffective counsel by: (1) failing to investigate Petitioner's supposed alibi and call certain alibi witnesses to testify; (2) interfering with Petitioner's right to testify in his own defense; (3) failing to object to the Court's allegedly improper jury instructions on aiding and abetting liability; (4) failing to object to the Court's allegedly improper jury instructions regarding the death of a person through the use of a firearm; (5) failing to request jury instructions for lesser-included offenses to the firearms count; and (6) failing to advise Petitioner of an alleged plea offer from the government. The Court considers each argument in turn and concludes that all are without merit.

A. Failure to Call Alibi Witnesses

Petitioner claims that Greenfield was ineffective for failing to contact two

witnesses who could allegedly establish Petitioner's alibi that, at the time of the robbery, he was not present at the scene of the robbery. The first alleged alibi witness, a woman named Portia whom Petitioner describes as an event planner, would purportedly have established that at the time of the robbery and shooting she was with Petitioner at the Palisades Mall in Nyack, New York. (Pet., Ex. 1 ("Petitioner Aff.") ¶¶ I, II.) The second alleged alibi witness, Dominique Philippe, would apparently have testified that he was present in the vicinity of the Building at the time of the shooting and attempted robbery and that Petitioner was not among the robbers who entered and exited the Building. (Pet., Ex. 2.) Petitioner avers that he asked Greenfield to contact both Portia and Philippe in advance of trial but that Greenfield never did so. (Pet. 5–7.) For his part, Greenfield's affidavit makes clear that neither he nor investigator James Dowd were informed of a potential alibi defense. (Doc. No. 98 ("Greenfield Aff.") ¶¶ 3, 4.) Greenfield asserts that Petitioner never mentioned Portia or Philippe and never asked Greenfield to interview them. (*Id.* ¶ 3.) He also explains that, if Petitioner had asked him to interview Portia and Philippe, he would have directed Dowd to do so. (*Id.*)

The law is clear that a petitioner challenging his conviction on the grounds of ineffective assistance of counsel "[bears] the burden of proving his claim." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). "[W]hen the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than-full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009). Here, the only evidence Petitioner presents in support of his assertion that he asked Greenfield to seek out Portia and Philippe is his own affidavit.[3] (Pet., Ex. 1.) But "[w]hen the petitioner can only buttress his claim with his own affidavit and the counsel's affidavit squarely contracts [petitioner's] affidavit, the petitioner has not overcome the burden of proof and the claim should be dismissed without an evidentiary hearing." *Muyet v. United States*, No. 95 Cr. 941 (PKL), 2004 WL 1746369, at *6 (S.D.N.Y. Aug. 3, 2004); *see also Chang*, 250 F.3d at 86 (where a petitioner's "proffer involved a generic claim – one that can be . . . made in any case in which the defendant fails to testify – based solely on his own highly self-serving and improbable assertions . . . [and where] [t]rial counsel's detailed description of events was eminently credible[,] . . . [i]t was within the [district] court's discretion to [reject petitioner's ineffective assistance of counsel claim without a hearing.]"). Indeed, the Second Circuit has recognized that "[t]he trial judge is . . . in a position, based on the knowledge gained in the underlying criminal proceeding and on his or her role as a trier of fact in the habeas proceeding, to hold that [a] particular petitioner had no chance of overcoming counsel's detailed explanation and proving that counsel prohibited testimony in his or her defense." *Puglisi*, 586 F.3d at 215 (internal citations and quotation marks omitted). This intermediate step "between deciding the motion without the benefit of any supplemental materials and a full hearing with live witnesses . . . avoids the delay, the needless expenditure of judicial resources, and the burden on trial

---

[3] While Philippe suggests in his affidavit that he would have been willing to testify at trial on Petitioner's behalf (Pet., Ex. 2), Philippe has no knowledge as to whether Petitioner asked Greenfield to contact him or whether Petitioner even informed Greenfield about Philippe's existence. And Petitioner has not supplied an affidavit from Portia, whose last name is never even identified.

4

counsel and the government." *Id.*; *see also Foster v. United States*, 581 F. App'x 105, 106 (2d Cir. 2014) (holding that the district court properly declined to hold a testimonial hearing because it "reasonably decided that the testimony of [petitioner] and her trial counsel would be little more than a 'swearing match' and [would therefore] add little or nothing to the written affidavits."); *Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (holding that "the district court acted within its discretion in declining to hold a full-blown testimonial hearing" regarding petitioner's claim that trial counsel failed to file a notice of appeal after being asked to do so "[i]n light of the detailed affidavit of defense counsel, the transcripts of the proceedings, the district court's observations of [petitioner] and his interactions with counsel, and the district court's careful factual analysis[.]"); *Weingarten v. United States*, 700 F. App'x 43, 45 (2d Cir. 2017); *United States v. Young*, 654 F. App'x 32, 36 (2d Cir. 2016); *Davis v. United States*, 558 F. App'x 127, 128 (2d Cir. 2014); *but see Quinones v. United States*, 637 F. App'x 42, 43 (2d Cir. 2016) (holding that the district court impermissibly credited "the explanation given [by trial counsel] in an unsworn, unsigned document that was not evidence" and that the district court should have held a full evidentiary hearing because "even if we were to credit [trial counsel's] 'affidavit,' [petitioner] may still have advanced a plausible claim.").

Here, having reviewed both Petitioner's affidavit and Greenfield's signed, sworn affidavit; having observed Greenfield's performance throughout the underlying criminal case; and having determined that Petitioner falsely accused Greenfield "under the penalty of perjury" of failing to advise Petitioner of a plea offer that the government never even made, *see* Section F below, the Court has no hesitation in concluding that Greenfield's affidavit is undoubtedly the more credible one and that a hearing is not warranted. Indeed, it bears noting that at trial, the Court expressly advised Petitioner of his right to testify, at which time Petitioner acknowledged that he understood that he had the right to testify, that he had discussed that right with his attorney, and that he had concluded that he did not wish to do so. (*See* Tr. 1671:22–1672:3.) At no time did Petitioner indicate that he had an alibi defense, or that there were other witnesses whom he wished to call. At sentencing, the Court again addressed Petitioner and advised him of his right to be heard before the Court imposed a sentence. (Doc. No. 87 at 35:5–9.) Once again, Petitioner declined the opportunity to speak; once again, he made no mention of an alibi defense or the existence of witnesses who could testify that he was a location other than the scene of the robbery. (*Id.*) On direct appeal, Petitioner challenged Richardson's in-court identification and the jury instructions related to that identification, but again made no attempt to articulate an alibi defense or the existence of an alibi witness. *See United States v. Reed*, 570 F. App'x 104, 109–110 (2d Cir. 2014). And after the Second Circuit affirmed his conviction on appeal, Petitioner sent a handwritten letter to the Court requesting a copy of the verdict form in order to pursue a further challenge to the jury instructions on the firearm charge. (Doc. No. 94.) Once again, Petitioner made no mention of an alibi defense or the existence of witnesses who could have corroborated such a defense. In short, Petitioner has presented no evidence – outside of his own, self-serving affidavit – to contradict Greenfield's emphatic denial that Petitioner ever raised the possibility of an alibi defense, much less the existence of an alibi witness, with either Greenfield or investigator Dowd. (Doc. No.

5

98). Accordingly, because defense counsel "cannot be faulted for failing to raise an issue about which he had neither knowledge nor reason to know[,]" *Morales v. United States*, 635 F.3d 39, 44 (2d Cir. 2011) (citing *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984)), Petitioner's claim fails.

But even if the Court were to credit Petitioner's story and assume that Greenfield was aware of the alleged alibi witnesses, Petitioner's assertion that Greenfield failed to contact Portia is legally insufficient to form the basis of a claim for ineffective assistance of counsel. "[W]here a petitioner claims that his attorney failed to investigate potential witnesses, 'the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony.'" *United States v. Peterson*, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012) (quoting *Taylor v. Poole*, 07-cv-6318 (RJH) (GWG), 2009 WL 2634724, at *14 (S.D.N.Y. Aug. 27, 2009)); *cf. Eisemann v. Herbert*, 401 F.3d 102, 108–09 (finding that, given an absence in the record as to what a supposed exculpatory witness would say if called to testify, or if they would testify at all, it was "speculation to suggest that [the] testimony would have been exculpatory"). As a result, "[c]ourts have rejected ineffective assistance claims based on failure to investigate potential witnesses where the petitioner failed to provide affidavits from the witnesses stating what testimony they would have offered." *Id.*

Here, Petitioner has not even provided a last name for Portia, much less submitted an affidavit from her stating that she would have been willing to testify and the nature of that testimony. Thus, Petitioner's claim that Portia would offer exculpatory testimony is insufficiently supported and can be dismissed. And while Petitioner *has* attached an affidavit that purports to be from Philippe, the Court finds that testimony consistent with Philippe's affidavit would not have affected the outcome of the case given the strength of the government's evidence, the credibility of the government's witnesses, and the fact that Philippe's testimony, even if offered and believed, would only have established that Philippe did not see or recognize Petitioner, not that Petitioner was somewhere else at the time of the robbery. Accordingly, the Court finds that Petitioner has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

B. Interference with Right to Testify

Petitioner next argues that Greenfield was ineffective by advising Petitioner that testifying on his own behalf "would get [him] convicted," thus leading to Petitioner's decision not to take the stand in his own defense. (Petitioner Aff. ¶ VI.) According to Petitioner, his counsel advised him not to testify and present his alibi defense given Petitioner's prior criminal history and the unavailability of corroborating alibi evidence and witnesses. (Pet. 6.) Petitioner states that he followed the advice of his counsel, "abandoned" his alibi defense, and chose not to testify. (*Id.*) In contrast, Greenfield states that Petitioner never told him about the alibi defense and that he therefore did not advise Petitioner against taking the stand to present such a defense. (Greenfield Aff. ¶ 5).

Every defendant in a criminal case has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49–50 (1987). The "ultimate decision regarding whether to testify belongs to the defendant," and the decision to testify "may not be made

6

for [the defendant] by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997). However, defense counsel "should always advise the defendant about the benefits and hazards of testifying and not testifying, and may strongly advise the course that counsel thinks best[.]" *Id.* at 79.

Petitioner fails to assert a viable claim here because his own affidavit demonstrates that he understood he was responsible for the ultimate decision whether or not to testify. Petitioner states that he "agreed with Mr. Greenfield not to take the stand in my behalf and in the absence of the corroboration of my story by Philippe." (Petitioner Aff. ¶ IV). Thus, by Petitioner's own admission, he was aware of his right to testify, aware that the choice of whether to exercise that right was his own, and yet declined to do so. Moreover, as noted above, the Court expressly advised Petitioner at trial of his right to testify, whereupon Petitioner acknowledged that he understood that he had the right to testify, that he had discussed that right with his attorney, and that he had concluded that it was in his interest not to testify. (*See* Tr. 1671:22–1672:3.) At no point in time did Petitioner indicate that he wished to testify (or that he had an alibi defense). Petitioner thus lacks any colorable claim that Greenfield acted in a way that departed from the standards of professional conduct with respect to Petitioner's right to testify.

C. Aiding and Abetting Jury Instructions

Petitioner also contends that he received constitutionally deficient counsel because Greenfield failed to object to the aiding and abetting instructions given to the jury on Count Three – causing death through the use of a firearm pursuant to 18 U.S.C. § 924(j), which defines murder and manslaughter by reference to the definitions set forth in 18 U.S.C. § 1111 and § 1112. Petitioner claims that the Court failed to instruct the jury that Section 1111(a) requires findings of specific intent to kill and premeditation before the jury could convict an individual of aiding and abetting a murder. Thus, Petitioner claims he could have been convicted of aiding and abetting the murder of another without the jury making the allegedly requisite findings of specific intent and premeditation as to Petitioner. Petitioner further contends that counsel failed to object to these jury instructions, even after Petitioner directed him to do so. (Pet. 8–9; Petitioner Aff. ¶ VII.) This argument fails, however, because Petitioner is mistaken on the law.

An attorney's failure to object to a jury instruction "constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'" *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir. 1998)). Here, contrary to Petitioner's contention, Section 924(j) – through its incorporation of the definition of murder in Section 1111(a) – does not require that the jury make findings of specific intent or premeditation before convicting an aider and abettor of murder. Rather, Section 1111 embraces the common law felony murder doctrine. *See United States v. Thomas*, 34 F.3d 44, 48 (2d Cir. 1994). Specifically, Section 1111 provides that one variety of first-degree murder is a murder "committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . ." 18 U.S.C. § 1111(a). "Because § 924(j) incorporates § 1111(a), an aider and abettor can be liable for murder based upon his intent to commit robbery if a co-participant in the robbery causes the death of the victim through the use of a firearm during the commission of the robbery." *United States v. Ashburn*, 76

F. Supp. 3d 401, 428 (E.D.N.Y. 2014); *see also Thomas*, 34 F.3d at 48–49 (holding that a killing committed in the commission of a robbery satisfies the statute's intent requirement for a murder charge); *United States v. Gonzalez*, 399 F. App'x 641, 649 (2d Cir. 2010). Thus, under Section 924(j) an individual can be convicted of murder within the meaning of Section 1111(a) if he knowingly participated in a robbery that resulted in death.[4]

Because Section 924(j) allows for felony murder liability and does not require findings of specific intent or premeditation for an aider and abettor, the jury instruction given at trial here did not approach a "clear and previously identified error." And since failing to object to a "legally correct [jury charge] . . . does not constitute deficient performance," *Aparicio*, 269 F.3d at 99, Greenfield clearly did not provide ineffective assistance by disregarding Petitioner's alleged directive that he object to the Court's instructions.

Nor can Petitioner demonstrate meaningful prejudice. "[I]n order to show prejudice of the magnitude needed to support a claim of ineffective assistance of counsel," a defendant challenging jury instructions must demonstrate "a reasonable probability that but for the failures to object, the jury would not have convicted him on some count on which it found him guilty."

---

[4] To the extent that Petitioner argues that the government was required to show that Petitioner intended that a firearm be used in the course of the robbery, *see United States v. Wilkerson*, 361 F.3d 717, 724 (2d Cir. 2014), the government obviously met that burden here, since the evidence presented at trial established that Petitioner himself arrived at the scene of the robbery with a firearm and that it was Petitioner himself – not a co-conspirator – who fired the weapon that killed Garcia. (Tr. 538:2–543:19; 546:3–18.)

*Bennett v. United States*, 663 F.3d 71, 88 (2d Cir. 2011). Here, Petitioner was not prejudiced for the simple reason that the jury instructions were proper and that such an objection by Greenfield would have been denied by the Court.

Finally, the evidence at trial amply demonstrated that it was Petitioner himself who shot and killed Garcia, supporting Petitioner's conviction on the murder charge without resorting to an aiding-and-abetting theory. Indeed, it is clear from the jury instructions and the government's summation that the government's theory was that Petitioner committed the murder and that the aiding-and-abetting instruction was for his co-defendants Reed and Gonzalez. Thus, it is clear that Petitioner did not receive ineffective assistance and suffered no prejudice as a result of counsel's failure to object to the Court's aiding-and-abetting instructions.

### D. Lack of Jury Instructions on Lesser-Included Offenses

Petitioner further claims that Greenfield was ineffective by failing to request that the Court charge the jury on the lesser-included offenses of the Section 924(j)(1) murder charge. Specifically, he argues that it was objectively unreasonable for Trial Counsel not to request a jury instruction for firearm possession under 18 U.S.C. § 924(c) and manslaughter under 18 U.S.C. § 924(j)(2). He contends that such instructions would have been appropriate because he and his co-conspirators lacked the specific intent to kill and it would have been plausible for the jury to conclude that the gun had "gone off accidentally." (*See* Pet. 10.) Petitioner alleges that he told Greenfield to request the lesser-included offense charges (Petitioner Aff. ¶ VII) – an assertion that Greenfield denies (Greenfield Aff. ¶ 7).

8

A defendant may seek, and the Court may charge, a lesser-included offense instruction pursuant to Rule 31(c) of the Federal Rules of Criminal Procedure if "based on the evidence at trial, 'a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.'" *United States v. Dhinsa*, 243 F.3d 635, 674 (2d Cir. 2001) (citing *Schmuck v. United States*, 489 U.S. 705, 716 n.8 (1989)).

Here, it was not error for Greenfield to eschew requesting a lesser-included offense charge. Put simply, Petitioner's argument is premised on the same misunderstanding of Section 1111(a) described above. Given that Section 1111(a) extends to felony murder, the jury would only have been able to convict Petitioner of possessing a firearm in violation of Section 924(c) and not murder in violation of Section 924(j) if they concluded that Garcia did not die. But the jury convicted Petitioner on Count One (conspiracy to commit robbery) and Count Two (attempted robbery), and there was no evidence introduced at trial to suggest that Garcia's death was a hoax. In fact, Petitioner's defense at trial – and in this habeas petition – was one of misidentification. Thus, pursuant to Petitioner's theory of the case, the jury could either (1) accept that Petitioner had been misidentified and did not participate in the crime, or (2) reject Petitioner's theory and conclude that he had participated in the crime. Obviously, if the jury had credited Petitioner's defense, it would have acquitted him entirely on all three counts. Accordingly, Petitioner's defense provided no rational basis for a jury instruction on a lesser-included offense charge.

E. Failure to Object to the Indictment

Petitioner next argues that because the indictment charged him with violating Section 924(j) without specifying the subsection – Section 924(j)(1) murder or Section 924(j)(2) manslaughter – he could only properly be charged with the lesser-included manslaughter offense. He asserts that Greenfield's failure to object on this ground was constitutional error. Petitioner is, once again, mistaken.

An indictment is "sufficient if it [] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Graziano v. United States*, 12-cv-738 (JFB), 2013 WL 298116, at *8 (E.D.N.Y. Jan. 25, 2013) (quoting *Hamling v. United States*, 418 U.S. 87 (1974)). To state an offense, "[a]n indictment need only track the language of the statute and, if necessary to apprise the defendant 'of the nature of the accusation against him,' . . . state time and place in approximate terms." *United States v. Flaharty*, 295 F.3d 182, 193 (2d Cir. 2002) (first alteration in original) (quoting *United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994)).

Here, the Section 924(j) count in the indictment, Count Three, states that on or about December 1, 2007 in the Southern District of New York, Petitioner, during and in relation to a robbery, "did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, . . . and in the course thereof did cause the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111(a) . . . by discharging, and aiding and abetting the discharge, of a firearm at Garcia in the vicinity of 1275

Lafayette Avenue, Bronx, New York." (Doc. No. 5 at 2–3). While Count Three does not specifically mention Section 924(j)(1), the indictment sufficiently tracked the language of Section 924(j)(1) – which applies "if the killing is a murder (as defined in [18 U.S.C.] section 1111)" – by stating that Petitioner committed a "murder" and by providing the approximate time, place, and circumstances of that murder. Accordingly, it would have been pointless for Greenfield to object to the indictment on the grounds that it was vague. The failure to make this argument was clearly not improper. *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance."). And since the Court would have promptly denied such a motion if made, Petitioner suffered no prejudice as a result of Greenfield not making it. Consequently, Petitioner has once again failed to establish either prong of the *Strickland* standard.

### F. Failure to Advise Petitioner of a Plea Offer

Finally, in his supplement to the Petition, Petitioner claims that Greenfield was ineffective for failing to "adequately advis[e] [him] of a plea offer from the government, and for not advising [him] of the sentence exposure [he] faced if [he did not] accept[] the government['s] offer . . . ." (Doc. No. 129.)

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Here, however, as the government explained in Petitioner's presence at trial, a formal plea offer was never made to Petitioner. (*See* Tr. 3:15–4:5.) In fact, the government stated that it was "never close" to reaching "any type of disposition" with Petitioner or his co-defendants. (*Id.*) Obviously, Greenfield cannot be deemed ineffective for failing to advise Petitioner of a plea offer that never existed. Accordingly, because the government never offered a plea to Petitioner and because "defendant has no right to be offered a plea[,]" *Frye*, 566 U.S. at 148, Petitioner's final allegation of ineffective assistance of counsel must fail.

### IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that the Petition is DENIED. In addition, because Petitioner has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be undertaken in good faith, and, therefore, Petitioner may not proceed *in forma pauperis*.

The Clerk is respectfully directed to terminate the motions pending at docket numbers 95 and 129 in case No. 11-cr-487, to close case No. 15-cv-3956, and to mail a copy of this Opinion and Order to Petitioner.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: September 26, 2018
New York, New York